### John D. Casey, Administrator, v. C. L. Daugherty.

#### Gen. No. 11,755.

1. NEGLIGENCE—*when not established.* Held in this case as a matter of law that the evidence failed to establish negligence upon the part of the master, where the servant was injured while engaged in the performance of his duty in unloading grain from railway cars into an elevator.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed February 9, 1905.

**Statement by the Court.** Appellant's intestate was injured October 10, 1898, while in the employ of appellee. He began a suit for damages November 23, 1899, but died February 27, 1903, from pneumonia, and appellant was substituted as plaintiff in the action. The cause was heard in the Circuit Court. At the close of plaintiff's evidence, on motion of the defendant, the court instructed the jury to find the defendant not guilty. The motion of appellant for a new trial was overruled and judgment was entered. Appellant brings the case to this court.

At and prior to the time of the injury appellee was engaged in operating a grain elevator. The deceased had been in the employ of appellee for more than a year prior to such time, and for seven months had been engaged in unloading grain from railway cars into the elevator. This work was done by means of a movable steam shovel. The attorneys for appellant describe this shovel as follows: "A part of this machine consisted of

a drum around which wound a rope which led down to the floor in the opening (in the elevator) through a stationary pulley, thence out through the opening of a second stationary pulley fastened to the side of the building, through this pulley into the car when drawn up alongside the elevator, and there attached to a scoop or shovel. When the car was drawn up in place the door or opening in the side of the car was opposite the opening in the elevator. The doors of the car were then removed and two men would enter the car; one stood near the opening of the car and pulled the rope, while the other carried the scoop or shovel to the end of the car, filling it with grain, notifying his partner to let go the rope, and by giving slack to the rope the scoop was drawn to within one or two feet from the opening, its contents dumped through the opening into a grate or boot below and between the opening in the car and elevator. These men would change when one end of the car was cleaned. The one pulling the rope to unload the first half would handle the scoop unloading the other. This automatic machine, when working properly, when the rope was drawn, revolved toward the car, giving slack to the rope, a clutch set in on the shaft and the machine reversed in the opposite direction, continuing until the shovel full of grain reached the point where it was dumped."

The deceased, then seventeen years of age, and his fellow-workman, Kitzerow, operated this shovel. That was their only business. On the day in question a car of loose oats was brought into position to be unloaded. The outer door was pushed back, and then the inner door, in the presence of the deceased, was removed by the foreman and Kitzerow. After the oats near the doorway had ceased to run out, the deceased and Kitzerow, upon the order of the foreman, entered the car and began the process of unloading. The deceased handled the shovel and Kitzerow pulled the rope until the grain had all been removed from the east end of the car. They then changed work, Kitzerow handling the shovel and the deceased pulling the rope. The deceased stood on the car floor, in a fairly clean place, west

of and about two feet back from the open door. After two or three shovels full had thus been unloaded from the west half of the car, the deceased pulled the rope again, and the pull becoming harder as he approached the end, he put his right foot out into the door opening, over which the oats were then running, thinking, as he testified, that there was an iron strap running across the opening, nailed to the floor of the car, against which he could place his foot and thus get a purchase. There was no such strap upon this car, and the floor from the inner door slanted outward and downward to its edge. The result was that his foot slipped on out until it came in contact with the pulley fastened to the side of the elevator, and his ankle was thereby broken.

J. K. McMahon and F. H. Trude, for appellant.

Lackner, Butz & Miller and C. E. Heckler, for appellee.

Mr. Presiding Justice Ball delivered the opinion of the court.

There is but a single question in this case, and that is, did the trial court err in directing the jury to find a verdict for appellee at the close of plaintiff's evidence.

We understand the rule to be that "it is not within the province of the judge on such a motion to weigh the evidence and ascertain where the preponderance is. This function is limited strictly to determining whether there is or is not evidence legally tending to prove the fact affirmed, *i. e.*, evidence from which, if credited, it may reasonably be inferred, in legal contemplation, the fact affirmed exists, laying entirely out of view the effect of all modifying or countervailing evidence;" or, to state it in other words, whether there is any evidence on the part of the plaintiff fairly tending to support each and every material allegation of the declaration. Woodman v. Ill. Tr. & Savings Bank, 211 Ill. 578; Chicago City Ry. Co. v. Martensen, 198 Ill. 511.

To recover in this action appellant, in addition to prov-

Casey v. Daugherty.

ing the accident and consequent injury, must show negligence in that regard on the part of appellee, and the exercise of reasonable care upon the part of the deceased for his personal safety.

There is no evidence in this case tending to show any defect in the steam shovel or in the ropes or pulleys by which it was worked. If the machine "reversed" at the time the deceased was injured, of which there is no direct evidence, that fact was due to its construction and was not a defect. Its working efficiency depended upon its reversing whenever the rope was slackened. The deceased was aware of this action and had known it for at least seven months prior to his injury. Proof of its unexpected reversal would tend to indicate carelessness upon the part of the deceased rather than a defect in the machine.

Further, if this machine was defective in any particular, it must have been known to the deceased and to his fellow-workman. They, and they alone, had used it constantly for many weeks next prior to the accident. Neither of them had made complaint. There is no evidence tending to prove that the master or his foreman knew of or should have known of its defective condition, if it was defective. The rule in this regard is stated in Goldie v. Werner, 151 Ill. 556, as follows: "The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions: 1st, That the appliance was defective; 2nd, That the master had notice thereof, or knowledge, or ought to have had; 3rd, That the servant did not know of the defect, and had not equal means of knowing with the master." From this plain rule there has been no departure.

It is alleged that the car was defective because of the downward slope of the floor from the line of the inner door outward, and because of the absence of an iron strap across the floor at the doorway. When the car was in place to be unloaded and the outer door was pushed back, the deceased, his fellow-workman and the foreman stood there looking at the doorway. The slant of the floor out-

ward was in plain view to each of the three men. There is nothing in the evidence to show that this supposed defect was more visible to one of them than to the others, nor that the deceased, standing there and looking at the inner door, did not see what was plainly before his eyes. In addition, this slope was a part of the original construction of the car, and did not come from disrepair. If the place where the deceased said the iron strap should have been was then visible, the deceased had like opportunity to note its absence as had the foreman. If that place was further in the car and thus hidden by the inner door and the oats, the foreman did not know that it was wanting, and hence his not warning the deceased that it was lacking was not negligence which will render appellee liable in this action. Again, common knowledge tells us that an iron strap lying upon and fastened to the floor of the car was not intended to be used as a brace by the men who were engaged in unloading the car; and if such a use were possible, appellee was not bound, under penalty of being held in damages for neglect, to ascertain and warn deceased of its absence, since such a use could not be reasonably anticipated.

Believing that there is no negligence shown on the part of appellee, we affirm the judgment of the Circuit Court.

*Affirmed.*